ROBERT R. POWELL, SBN 159747
SARAH E. MARINHO, SBN 293690
POWELL & ASSOCIATES
925 West Hedding Street
San Jose, California 95126
T: (408) 553-0201
F: (408) 553-0203
E: rpowell@rrpassociates.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIKKI MARTINEZ,<br><br>          Plaintiff,<br><br>     vs.<br><br>COUNTY OF SANTA CLARA,<br>SALVADORE JACQUEZ, JON QUIRO,<br>JASON SATARIANO, EAMONN DEE,<br>ADAM TORREZ, ELMER WHEELER, and<br>MATTHEW TRACEY,<br><br>          Defendants. | Case No.<br><br>COMPLAINT FOR VIOLATION<br>OF CIVIL RIGHTS -JURY<br>TRIAL DEMANDED |

**NATURE OF THE ACTION**

1.     Correctional officers employed by the County of Santa Clara regularly exact extrajudicial punishment on inmates in their custody.  The County has failed to properly train, supervise and discipline correctional officers for such conduct, and as a result there is a culture within the jail of excessive use of force.  Plaintiff Rikki Martinez was beaten by a gang of correctional officers assigned to guard him, and now seeks damages for this violation of his constitutional rights.

*//*

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

**JURISDICTION**

2.     The claims alleged herein arise pursuant to 42 U.S.C. § 1983 and the Eighth and

Fourteenth Amendments to the United States Constitution.

3.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and

1367.

**VENUE**

4.     Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)

because the unlawful acts, practices and omissions giving rise to the claims brought by

Plaintiff occurred in the County of Santa Clara, which is within this judicial district.

**INTRADISTRICT ASSIGNMENT**

5.     Assignment to any division within this district is proper pursuant to Civil L.R. 3-2(c)

since this is a prisoner civil rights action.  The events giving rise to this claim occurred in the

County of Santa Clara.

**PARTIES**

6.     Plaintiff RIKKI MARTINEZ (hereinafter "MARTINEZ") remains, and was at all times

herein mentioned, a pretrial detainee in the Santa Clara jails in the custody of Defendant Santa

Clara County.  He was arrested in November 2014, entered pleas of not guilty, and has not

been convicted of any charges, including the ones resulting from the false reports by the

Defendants in this case.

7.     Defendant COUNTY OF SANTA CLARA (hereinafter "COUNTY") is a municipal

corporation duly organized under the laws of the State of California.  Santa Clara County

Department of Corrections ("DOC") is a subdivision of COUNTY, which operates three jail

facilities: The Main Jail Facility, Elmwood Women's Correctional Complex, and the

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

Elmwood Men's Correctional Complex.  COUNTY is responsible for ensuring that jail policies and practices do not violate individuals' substantive and procedural due process rights.

8.     At all times mentioned herein, Defendant SALVADORE JACQUEZ (hereinafter "JACQUEZ") was employed as a correctional officer for defendant COUNTY.  Defendant JACQUEZ is sued individually and as a correctional officer for the COUNTY.  By engaging in the conduct described below, Defendant JACQUEZ acted under the color of law and in the course and scope of his employment for Defendant COUNTY.  By engaging in the conduct described here, Defendant JACQUEZ exceeded the authority vested in him as a correctional officer under the United States Constitution and as an employee of the COUNTY.

9.     At all times mentioned herein, Defendant JON QUIRO (hereinafter "QUIRO") was employed as a correctional deputy for defendant COUNTY.  Defendant QUIRO is sued individually and as a correctional deputy for the COUNTY.  By engaging in the conduct described below, Defendant QUIRO acted under the color of law and in the course and scope of his employment for Defendant COUNTY.  By engaging in the conduct described here, Defendant QUIRO exceeded the authority vested in him as a correctional deputy under the United States Constitution and as an employee of the COUNTY.

10.     At all times mentioned herein, Defendant JASON SATARIANO (hereinafter "SATARIANO") was employed as a correctional deputy for defendant COUNTY.  Defendant SATARIANO is sued individually and as a correctional deputy for the COUNTY.  By engaging in the conduct described below, Defendant SATARIANO acted under the color of law and in the course and scope of his employment for Defendant COUNTY.  By engaging in the conduct described here, Defendant SATARIANO exceeded the authority vested in him as

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

a correctional deputy under the United States Constitution and as an employee of the COUNTY.

11.     At all times mentioned herein, Defendant EAMONN DEE (hereinafter "DEE") was employed as a correctional deputy for defendant COUNTY.  Defendant DEE is sued individually and as a correctional deputy for the COUNTY.  By engaging in the conduct described below, Defendant DEE acted under the color of law and in the course and scope of his employment for Defendant COUNTY.  By engaging in the conduct described here, Defendant DEE exceeded the authority vested in him as a correctional deputy under the United States Constitution and as an employee of the COUNTY.

12.     At all times mentioned herein, Defendant ADAM TORREZ (hereinafter "TORREZ") was employed as a correctional deputy for defendant COUNTY.  Defendant TORREZ is sued individually and as a correctional deputy for the COUNTY.  By engaging in the conduct described below, Defendant TORREZ acted under the color of law and in the course and scope of his employment for Defendant COUNTY.  By engaging in the conduct described here, Defendant TORREZ exceeded the authority vested in him as a correctional deputy under the United States Constitution and as an employee of the COUNTY.

13.     At all times mentioned herein, Defendant ELMER WHEELER (hereinafter "WHEELER") was employed as a correctional sergeant for defendant COUNTY.  Defendant WHEELER is sued individually and as a correctional sergeant for the COUNTY.  By engaging in the conduct described below, Defendant WHEELER acted under the color of law and in the course and scope of his employment for Defendant COUNTY.  By engaging in the conduct described here, Defendant WHEELER exceeded the authority vested in him as a

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

correctional sergeant under the United States Constitution and as an employee of the COUNTY.

14.     At all times mentioned herein, Defendant MATTHEW TRACEY (hereinafter "TRACEY") was employed as a correctional sergeant for defendant COUNTY.  Defendant TRACEY is sued individually and as a correctional sergeant for the COUNTY.  By engaging in the conduct described below, Defendant TRACEY acted under the color of law and in the course and scope of his employment for Defendant COUNTY.  By engaging in the conduct described here, Defendant TRACEY exceeded the authority vested in him as a correctional sergeant under the United States Constitution and as an employee of the COUNTY.

## FACTUAL ALLEGATIONS

**MARTINEZ Allegedly Assaulted a Correctional Deputy at Elmwood Correctional Complex, and Was Transferred to Main Jail.**

15.     On April 18, 2016, MARTINEZ was an inmate at the Elmwood Correctional Facility ("Elmwood").

16.     Around 4:00pm, Elmwood correctional deputies allege that MARTINEZ kicked a deputy in the face.  MARTINEZ has pled not guilty to this allegation and is presumed innocent.

17.     Meanwhile, Sergeant Elmer WHEELER was working as the C Team Admin/Intake/Booking Sergeant at the Main Jail Facility ("Main Jail").

18.     Around 4:45pm, WHEELER was informed about the incident with MARTINEZ at Elmwood.

19.     WHEELER was informed that the incident involved MARTINEZ kicking a deputy in the face.

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

20.   WHEELER was told that MARTINEZ would be re-housed to Main Jail at some point during WHEELER's shift.

21.   WHEELER informed custody deputies, including JACQUEZ, QUIRO, SATARIANO, DEE and TORREZ, of MARTINEZ' impending transfer to Main Jail.

22.   WHEELER informed custody deputies, including JACQUEZ, QUIRO, SATARIANO, DEE and TORREZ, that MARTINEZ had assaulted Elmwood staff.

23.   WHEELER instructed custody deputies to prepare for MARTINEZ to be housed in Pod number 2 of 4C.

24.   WHEELER conferred with Correctional Officer JACQUEZ about how WHEELER wanted the processing of MARTINEZ to go.

25.   Prior to housing MARTINEZ at Main Jail, WHEELER knew or should have known that MARTINEZ had previously been diagnosed with a mental health condition.

26.   A jail medical doctor diagnosed MARTINEZ with PTSD while he was in County custody in 2015 and prescribed medication accordingly.

27.   In addition, at the time MARTINEZ was transferred to Main Jail, it was Santa Clara County Department of Correction ("DOC") policy that all inmates determined to have a mental illness be identified on their confidential classification cards by a prominent Greek letter psi, commonly referred to in the jail as a "pitchfork."

28.   It is DOC procedure to review an inmate's classification prior to housing or re-housing them, and prior to being housed at Main Jail, MARTINEZ' classification was reviewed by WHEELER.

//

//

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

29.   After learning that MARTINEZ was alleged to have kicked another correctional officer, WHEELER conspired with JACQUEZ, QUIRO, SATARIANO, DEE and TORREZ to give MARTINEZ a beating as punishment.

30.   WHEELER conspired with JACQUEZ, QUIRO, SATARIANO, DEE and TORREZ to stage the beating to make it look like MARTINEZ was resisting and the deputies were merely trying to regain control and re-secure him.

31.   WHEELER conspired with JACQUEZ, QUIRO, SATARIANO, DEE and TORREZ to video-record this premeditated beating of MARTINEZ with strategic placement of deputies to make the interaction seem spontaneous and legitimate, and in an attempt to conceal the fact that MARTINEZ never actually grabbed or held onto JACQUEZ.

32.   JACQUEZ was the Training Officer and Emergency Response Team Leader on the fourth floor on this day.

33.   WHEELER advised JACQUEZ that JACQUEZ was to lead the escort of MARTINEZ during the housing process.

34.   WHEELER advised JACQUEZ that JACQUEZ would be the officer giving verbal instructions to MARTINEZ during the housing process.

35.   MARTINEZ was transported by Elmwood deputies to Main Jail, and around 9:12pm, MARTINEZ was escorted into the intake and booking area.

**MARTINEZ Processed into the Main Jail.**

36.   Jail Crimes Detective Mario Perez and Detective Edward Barrera arrived at Main Jail booking area in advance of MARTINEZ to collect his clothing for evidence.

//

//

7

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

37.    When MARTINEZ arrived to Main Jail booking around 9:12pm, he was taken to a safety cell so that he could be changed out of his Elmwood clothes and into Main Jail clothing for protective custody inmates.

38.    WHEELER was recording MARTINEZ on a department issued video recorder.

39.    Det. Perez stood by as custody deputies SATARIANO, QUIRO and Palayo facilitated MARTINEZ' change of clothing, while WHEELER recorded the interaction on video.

40.    QUIRO instructed MARTINEZ to face the wall, to which MARTINEZ responded, "Yes, Sir," and complied with the command.

41.    QUIRO advised MARTINEZ that QUIRO was going to take his leg shackles off, to which MARTINEZ responded, "Yes, Sir," and complied while he was unshackled.

42.    QUIRO informed MARTINEZ that QUIRO was going to take his handcuffs off, to which MARTINEZ responded, "Yes, Sir," and complied while he was unhandcuffed.

43.    QUIRO instructed MARTINEZ to remove his pants, to which MARTINEZ responded, "Yes, Sir," and complied by removing his pants.

44.    MARTINEZ was completely compliant during the entire Main Jail intake and housing processing.

45.    According to QUIRO, when MARTINEZ was told to remove his underwear, MARTINEZ' demeanor changed and he became agitated and the tone of his voice changed. MARTINEZ kicked his underwear at QUIRO, causing it to land on QUIRO's boot, off-camera.  QUIRO claimed his sense of security was heightened because he thought it seemed like MARTINEZ was getting upset.  QUIRO thought MARTINEZ was a big guy and looked like a strong guy.  QUIRO did not communicate his claimed observations regarding

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

MARTINEZ' alleged agitation to anyone at anytime during the processing or housing of MARTINEZ.

46.    According to SATARIANO, he also observed MARTINEZ showing signs of agitation by kicking his clothes towards staff and using profanity.  SATARIANO thought that MARTINEZ, "didn't want to do exactly what we told him, he wanted to do it his way." SATARIANO thought that "at that point he might attack us because he had priors already for attacking an officer earlier in the day."  SATARIANO also did not communicate his claimed observations regarding MARTINEZ' alleged agitation to anyone at anytime during the processing or housing of MARTINEZ.

47.    According to Sgt. WHEELER, who was video-recording the process of MARTINEZ changing clothes, it was obvious that MARTINEZ was upset.  WHEELER later reported that MARTINEZ showed his displeasure with the situation, exhibited confusion and frustration, slapped at his handcuffs and threw his hands up.  MARTINEZ also "looked at the deputies and gave a posture of agitation several times."  WHEELER also did not communicate his observations or concerns to anyone at anytime during the processing of MARTINEZ, or confer with anyone regarding a change of plans for MARTINEZ' housing procedure due to MARTINEZ' alleged demeanor.

48.    The video recording of the entire intake and housing processing does not show MARTINEZ' alleged agitation or any non-compliance, despite the camera being trained on MARTINEZ the entire time.

49.    The alleged agitation of MARTINEZ was only reported by the deputies the next day during interviews by detectives who were investigating the circumstances surrounding

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

MARTINEZ being taken by ambulance to the Emergency Room for several serious injuries that he did not have when he arrived at Main Jail from Elmwood.

50.   After MARTINEZ put on his newly issued pants and shirt, QUIRO re-secured MARTINEZ in his leg shackles and handcuffs.

51.   WHEELER instructed QUIRO and SATARIANO to bring MARTINEZ upstairs, and told Deputy Palayo to stay behind.

**MARTINEZ Escorted from Basement Intake Area up to 4th Floor, Pod 2.**

52.   Per's WHEELER's order, JACQUEZ took over escorting MARTINEZ to his cell.

53.   Prior to being housed, MARTINEZ was not issued standard institutional clothing or personal hygiene items, as required by DOC policy and California's Title 15 Minimum Standards for Local Detention Facilities (15 CCR §§ 1260, 1265).

54.   By policy, MARTINEZ should have been given his standard issue of clothing and hygiene items, commonly referred to in the jail as the "roll," prior to being housed.

55.   MARTINEZ was never given his roll because JACQUEZ knew MARTINEZ would not be in 4C2 long enough to need it.  He was going to the infirmary or the hospital after the beating he was about to receive.

56.   JACQUEZ escorted MARTINEZ from booking to the 4th floor by holding MARTINEZ' left arm, SATARIANO held MARTINEZ' right arm, while QUIRO also accompanied them, and WHEELER video-recorded them from behind.

57.   According to SATARIANO, while escorting MARTINEZ to his cell, "just by the way he was walking, I could tell that he was definitely still agitated…"  SATARIANO did not voice his observations of MARTINEZ' alleged agitation to any of his colleagues or superiors at anytime during the housing process.

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

58.    JACQUEZ had called up to 4C2 in advance to let 4th floor deputies know that MARTINEZ was coming to be housed.

59.    MARTINEZ was escorted into Pod #2 at 4C and directed toward Cell 25, a corner cell.

60.    Deputies DEE and TORREZ were waiting near Cell 25 when MARTINEZ arrived being escorted by JACQUEZ, QUIRO, SATARIANO and WHEELER.

**MARTINEZ Beaten by C-Team Deputies in Cell 25.**

61.    JACQUEZ directed MARTINEZ into Cell 25 and deputies QUIRO, SATARIANO, and DEE entered the cell behind them, while WHEELER filmed from the doorway.

62.    JACQUEZ ordered MARTINEZ to kneel on the bunk and face the wall.  MARTINEZ said "Yes, Sir," and complied.

63.    Team leader JACQUEZ did not follow protocol for a cell insertion of an inmate of MARTINEZ' classification.

64.    A typical cell insertion calls for the inmate to be escorted into the cell by Emergency Response Team (ERT) members while the inmate is walking backwards, bent over at the waist, with their head held down.  Once inside the cell, the inmate's head is pointed toward the cell door while ERT members systematically remove the restraints from the inmate (leg shackles first, followed by waist chains and handcuffs), all while applying pain compliance control holds to the inmate.  An assaultive inmate would be prone on the floor of the cell before restraints are removed.

65.    According to JACQUEZ, "I allowed him to kneel down on the bunk where the mattress was, which is a little more comfort for the inmate as opposed to lying him face-down on the concrete.  I didn't see any reason to use the floor as opposed to the bed because he was being cooperative and following directions without having to be told anything twice."

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

66.   Despite being aware that MARTINEZ was alleged to have kicked a deputy in the face only hours before, JACQUEZ said that he did not follow protocol because he, "didn't see any reason to utilize pain compliance holds or you know, have him face down and go through all that."

67.   Apparently by that time JACQUEZ had determined that MARTINEZ was compliant enough to ignore protocol for assaultive inmates.  MARTINEZ had been in JACQUEZ' presence/custody for only seven minutes.

68.   QUIRO removed MARTINEZ' leg shackles while JACQUEZ kept his left hand on MARTINEZ, and SATARIANO held MARTINEZ' right arm above the elbow.  DEE stood by the foot of the bed.  TORREZ entered the cell and stood by as MARTINEZ was unshackled.

69.   QUIRO removed the handcuff from MARTINEZ' left hand, while JACQUEZ kept his left hand on MARTINEZ' left forearm and held MARTINEZ' flaccid left hand in JACQUEZ' right hand.

70.   As JACQUEZ held MARTINEZ' left forearm, MARTINEZ' left hand dangled limply. At the very same time, JACQUEZ said, "Relax your hand."

71.   As QUIRO moved to remove the right handcuff, JACQUEZ held MARTINEZ' left forearm with JACQUEZ' left hand.

72.   With his left hand still on MARTINEZ' left forearm, JACQUEZ used his right hand to hold MARTINEZ' limp left hand and guided it upward, bending MARTINEZ' left arm at the elbow and holding MARTINEZ' left hand against MARTINEZ' upper back.

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

73.   Within two seconds of his right hand guiding MARTINEZ' left hand up and out of the view of the camera, JACQUEZ begins shouting, "Relax!  Relax your hand!  Let go of my hand!"

74.   MARTINEZ' hand was relaxed the entire time.

75.   As soon as JACQUEZ began shouting, "Let go of my hand!" MARTINEZ said "I ain't touchin' you!  Man, come on, man!"

76.   MARTINEZ never once grabbed JACQUEZ' hand, or otherwise held onto his hand or any other body part.  MARTINEZ was completely compliant during this entire video-recorded encounter.

77.   JACQUEZ later reported that MARTINEZ "grabbed my left hand in a fashion such as a handshake, but his hand was behind his back and it was a palm-to-palm type of grab."

78.   QUIRO was later interviewed by detectives regarding the incident.  Despite being within inches of JACQUEZ' hands, facing toward JACQUEZ' hands, and having an unobstructed view of both MARTINEZ and JACQUEZ, QUIRO did not report seeing MARTINEZ grab JACQUEZ.

79.   SATARIANO was later interviewed by detectives regarding the incident.  Despite being within inches of JACQUEZ' hands, facing toward JACQUEZ' hands, and having an unobstructed view of both MARTINEZ and JACQUEZ, SATARIANO did not report seeing MARTINEZ grab JACQUEZ.

80.   DEE was later interviewed by detectives regarding the incident.  Despite being within two to three feet of JACQUEZ' hands, facing toward JACQUEZ' hands, and looking directly at MARTINEZ and JACQUEZ, DEE reported that he did not see MARTINEZ grab JACQUEZ.

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

81.    TORREZ was later interviewed by detectives regarding the incident.  TORREZ reported that he saw MARTINEZ grab JACQUEZ' left arm.  The interviewer pressed TORREZ further about this important detail, asking, "His arm or his hand?"  To which TORREZ revised, "it was like on his wrist per se."

82.    As JACQUEZ yelled, "let go of my hand," he pushed MARTINEZ, as did the officers behind MARTINEZ - who was still kneeling on the bed with his face pressed against the wall - down to the mattress face first.

83.    SATARIANO, who had been holding MARTINEZ' right arm, followed MARTINEZ' torso down to the mattress, and ended up lying on top of MARTINEZ' right side.

84.    With MARTINEZ now face first on the bed, QUIRO sat on his legs.

85.    At the same time that JACQUEZ is yelling that MARTINEZ is gripping his hand, MARTINEZ repeatedly screams, "Help! Help!"

86.    JACQUEZ punched MARTINEZ in the face three to five times with a closed right fist.

87.    At the same time, SATARIANO held MARTINEZ' neck down while he was being punched.

88.    MARTINEZ' screams were muffled by the deputies pushing his face into the mattress while they pummeled his head, neck and shoulders with punches.  MARTINEZ could be heard straining to exclaim, "I can't breathe!  I can't breathe!" as at least three deputies were on top of him as he laid face first on the bed.

89.    JACQUEZ backed away from MARTINEZ about twenty seconds after he began yelling for him to let go of his hand.

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

90.    The glove on JACQUEZ' left hand was intact and in place; it was not ripped, twisted or askew as one might expect if it had truly been held tight by MARTINEZ while JACQUEZ yanked away with all his might.

91.    TORREZ immediately took over JACQUEZ' place near MARTINEZ' upper body.

92.    TORREZ struck MARTINEZ with his fist at least twice.

93.    Santa Clara County's Department of Corrections ("DOC"), Use of Force and Restraints Policy, effective October 20, 2014, defines the use of deputy's hands as weapons as Level 4 use of force. The policy requires that all deputies are required to document all incidents involving Levels 3, 4, or 5 in detailed written incident reports that are reviewed by the shift supervisor (a sergeant) and watch commander (a lieutenant).

94.    TORREZ never reported his use of Level 4 force on MARTINEZ.

95.    MARTINEZ was brutally beaten for over one minute by multiple deputies who had premeditated the attack as extrajudicial punishment for the alleged assault on their colleague.

96.    MARTINEZ thought that the deputies were going to kill him during the incident.  He screamed for help, and pled for his life while the deputies who were supposed to uphold the law took the law into their own hands and meted out the punishment they felt appropriate.

**MARTINEZ Taken to Jail Infirmary Where Nurses Immediately Call Ambulance to Transport Him to Hospital Emergency Room.**

97.    The deputies re-secured MARTINEZ and took him to the infirmary.  The nurse immediately assessed his injuries as requiring emergency attention.  An IV was started and MARTINEZ was placed on a gurney for transportation to the hospital.  Jail medical staff was unable to assess his right eye because it was swollen completely shut.

98.    MARTINEZ wept and pleaded with the infirmary staff to help him and told them, "They beat me."  A nurse examining MARTINEZ asked him when this injury happened, to

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

which MARTINEZ responded, "just right now before they brought me down here, five minutes ago, before they brought me down here… it hurts.  They took me in a cell and they beat the shit out of me.  I wasn't doing anything.  They beat me."

99.     MARTINEZ suffered head trauma as a result of the beating.  He had severe swelling of his head, including periorbital swelling of his right eye, discoloration, contusions, bloody nose, and a swollen and reddish-bluish discoloration of his right ear.  He suffered dizziness and a loss of consciousness.

100.   MARTINEZ' front tooth was chipped during the beating, and he also defecated and urinated on himself while he was attacked.

**Jail Staff Refused to Notify MARTINEZ' Emergency Contact of his Injuries or Status, and Thwarted Attempts by his Loved Ones to Visit Him.**

101.   Despite MARTINEZ being injured in County custody, and being transported off-site to the ER, jail staff did not contact MARTINEZ' designated emergency contact, his mother Teri Dominguez.

102.   MARTINEZ pleaded with staff to inform his emergency contact and they said that they could not unless he was unconscious, dying or dead.  Staff told MARTINEZ that this was the policy in such matters.

103.   The day after the beating, MARTINEZ managed to slip a note to another inmate in the infirmary, whom he did not know, with a request that he call MARTINEZ' mother, to let her know what happened.

104.   On April 19, 2016, at 12:56 PM, Ms. Dominguez received a phone call from the jail.  The man calling said, "Your son got beat up by officers last night.  He says he loves you and to come see him."  The man identified himself as Tim Ticer.

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

105.  Ms. Dominguez called Elmwood immediately to try to get information on her son. After being transferred a few times, she spoke to Lieutenant Taylor who advised that MARTINEZ was now at Main Jail.

106.  On April 20, 2016, Ms. Dominguez arrived at Main Jail and attempted to visit her son. A DOC staff member at the front desk, S. Guel, called the infirmary, and Nurse Raj told Ms. Dominguez that MARTINEZ was stable, and just had an injury to his right eye and a few scrapes. Ms. Dominguez was denied a visit on that day because the nurse said she wanted MARTINEZ to stabilize on his medications first.  The nurse estimated that MARTINEZ would be in the infirmary for two more days.

107.  On April 22, 2016, MARTINEZ' girlfriend, Rachelle, booked a visit for herself and Ms. Dominguez for 2:00pm and they arrived an hour early to check in.   At 1:28pm, they were surprised to receive a phone call from MARTINEZ, who said that he had just been moved to the south jail.  They informed MARTINEZ that they were at Main Jail for a pre-arranged 2:00pm visit and would see him shortly.  Ms. Dominguez and Rachelle inquired with the deputy at the front desk about MARTINEZ' transfer, and the deputy said they would have to go to the entrance for the south jail to see if they could visit.  The deputy at the south entrance told them that their visit was cancelled because they were too late.  Rachelle received no cancellation notice email, which is customary when visits are cancelled. MARTINEZ called them again at 2:04pm to say he was told the visit was cancelled.  Ms. Dominguez was not able to see her son until April 26, 2016, a full week after the beating.  His eyes were still blackened and he still had visible knots on his head.

//

//

17

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

**MARTINEZ Subjected to Intimidation and Retaliation After Filing an Administrative Grievance Regarding the Beating by Correctional Deputies.**

108.  MARTINEZ filed an administrative grievance form to notify the powers-that-be of the excessive use of force by C-Team deputies.  The grievance also noted that one of the deputies had broken MARTINEZ' prescription eyeglasses, which he had not been wearing, but were among his property.  At the time Elmwood deputies transferred him to Main Jail, he was shown his property to confirm it was all there.  When he received his property in the infirmary after the beating, his glasses were twisted and broken in half.  MARTINEZ' personal items such as photos, letters and books had been removed from his property without explanation. This was merely another assault on MARTINEZ's dignity.

109.  Sgt. Andrew Aguilar spoke to MARTINEZ about his grievance regarding the broken glasses and said he would look into replacing them.  After MARTINEZ followed up multiple times, Sgt. Aguilar said that he had permission from his Lieutenant, and that MARTINEZ should submit a white card to jail medical, to fulfill the request.  MARTINEZ submitted the medical request and was just given an eye exam, but no glasses or new prescription.  The infirmary informed him that prescription glasses are not provided by the Medical Unit and must be delivered by friends or family.

110.  Since the beating, MARTINEZ continues to be the subject of intimidation and retaliation by correctional officers/deputies.  On multiple occasions, JACQUEZ has come to MARTINEZ' cell, although JACQUEZ is not assigned to MARTINEZ' housing unit.

111.  On one particular occasion, on July 11, 2016, Sgt. TRACEY spoke to MARTINEZ in his cell 334 about grievance number 110746, regarding MARTINEZ' beating by deputies. TRACEY wrote in his notes: "Asked him what he wanted and he said "Justice."  Told him if he wanted this matter pursued he would have to talk to Jail Crimes and/or IA."  About one

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

hour after TRACEY discussed the beating with MARTINEZ, TRACEY walked by MARTINEZ' cell with JACQUEZ; an open and notorious act of intimidation.   While walking past, TRACEY and JACQUEZ both stared at MARTINEZ in an intimidating way.

112.   JACQUEZ was not assigned to MARTINEZ' housing area on the 3rd Floor at this time and his only purpose for making himself known was to intimidate MARTINEZ. MARTINEZ' cell was not on a thoroughfare; JACQUEZ could not have just been walking by, there is no reason to be in that housing unit unless you have business in that unit.

113.   On July 12, 2016, MARTINEZ received a denial of his grievance which indicated that his complaint regarding the beating was "already reviewed and closed."  MARTINEZ is informed and believes that the final denial was signed by Sergeant Andrew Aguilar.  That same day, MARTINEZ filed an appeal of the denial of his grievance by submitting a new grievance form to TRACEY.

114.   The very next day, July 13, 2016, MARTINEZ was inexplicably moved to Administrative Segregation Housing.  This so-called "upclass" to a more restrictive housing unit in Main Jail South, 3rd West Max ("Little Max"), was not the result of any new disciplinary incident involving MARTINEZ; the upclass was solely retaliation for MARTINEZ continuing to pursue his grievance regarding the beating by correctional deputies on April 18, 2016.

115.   MARTINEZ' housing in Little Max is more restrictive and requires that he be strip searched more frequently, including before and after visits, including attorney visits, and before showers.

//

//

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

116.   MARTINEZ' anxiety increased after being moved to Little Max because it is an isolated housing unit and no one would hear his cries for help if deputies tried to hurt him again.

117.   Since the attack on MARTINEZ in April 2016, COUNTY has failed to separate MARTINEZ from the correctional officers that MARTINEZ notified them had beaten him. During July and August of 2016, MARTINEZ was escorted back from a shower by QUIRO. On another occasion, his meal was delivered to his cell by JACQUEZ.

118.   Due to the false reports by JACQUEZ, QUIRO, SATARIANO, DEE, TORREZ and WHEELER, the Santa Clara County Office of the District Attorney charged MARTINEZ with felony violation of Penal Code § 243.1, battery upon a custodial officer.  The complaint alleges that MARTINEZ used force and violence upon the person of JACQUEZ, a custodial officer, when he was engaged in the performance of his duties.  None of the Defendants have stepped forward to admit that MARTINEZ was the victim rather than the perpetrator and they continue to violate his rights by allowing the prosecution to proceed against him with false evidence.

119.   MARTINEZ continues to suffer depression, anxiety, PTSD, flashbacks, nightmares and fear of law enforcement as a result of the premeditated beating by the deputies who were supposed to be guarding him, and in whose custody he remains today.

**MARTINEZ Continues to be Subjected to Cruel and Unusual Conditions of Confinement.**

120.   MARTINEZ is isolated in a tiny cell for 23 to 24 hours of every day, without receiving out-of-cell time that he is entitled to under state law.

121.   MARTINEZ has been effectively denied access to the minimum three hours per week of exercise to which he is entitled under Title 15 § 1065.

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

122.   The correctional staff often does not offer out-of-cell time, or they will offer it at odd hours, such as 1:00am, or immediately following a shower.

123.   Showers in MARTINEZ' housing unit are offered every other day, generally around 6:00pm or 7:00pm.  Deputies will then offer out-of-cell time around 8:00pm or 9:00pm that same evening, knowing that MARTINEZ will probably decline because he does not want to exercise right after he freshened up for the first time in two days.  This is done purposely to discourage MARTINEZ from exercising his right to out-of-cell time.  This is because it is a hassle for the deputy to restrain MARTINEZ in his waist chains, handcuffs, and leg irons, (which is required when escorting an inmate of his classification), and then remove his restraints once he is on the exercise yard, only to re-shackle him when he is done exercising, and unshackle him once he is in his cell.

124.   As a result, MARTINEZ recently went over two months without being exposed to sunlight.

125.   MARTINEZ is regularly forced to sit idle locked in his small cell for 47 hours at a time.  This isolation is inhumane, especially for people like MARTINEZ who suffer from preexisting mental health conditions and are likely to experience serious psychological and physiological harm as a result of these COUNTY practices.  MARTINEZ has provided the COUNTY with notice by filing administrative grievances regarding his unconstitutional lack of out-of-cell time and the COUNTY is deliberately indifferent to the serious risk of harm caused by these conditions.

126.   At the end of September 2016, MARTINEZ was abruptly moved to another cell in Third West.  It was neither an upclass nor downclass – just a transfer to cell 305.  The cell had blood on the walls and ceiling.  MARTINEZ complained to officers who provided him with

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

paper towels and bleach to clean the blood himself.  He was provided with no personal protective equipment, such as gloves, to prevent exposure to presumably hazardous bloodborne pathogens.

127.  MARTINEZ has also at various times had delays of up to a week in receiving his daily medication for his PTSD, been denied access to water for five hours, and been denied toilet paper.

128.  This denial of environmental stimulation and basic necessities of life is unacceptable in a civilized society for any inmate, but it is notable that MARTINEZ is a pretrial detainee who is not serving a sentence and is presumed innocent.

## DAMAGES

129.  As a proximate result of Defendants' conduct, MARTINEZ suffered severe pain and physical injuries. As a further proximate result of Defendants' conduct, MARTINEZ suffered severe emotional and mental distress, fear, terror, anxiety, depression, humiliation, embarrassment, and loss of his sense of security, dignity, and pride.

130.  As a further proximate result of defendants' conduct, MARTINEZ has incurred medical expenses, and will continue to incur medical expenses in the future in an amount according to proof.  MARTINEZ will also lose future income in an amount according to proof.

131.  The conduct of the individual Defendants was malicious, sadistic, wanton, and oppressive.  MARTINEZ is therefore entitled to award of punitive damages against the individual Defendants.

//

//

//

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CLAIMS FOR RELIEF**

**First Cause of Action**
**(Fourteenth Amendment – Cruel and Unusual Punishment, 42 U.S.C § 1983)**
**(Against Defendants JACQUEZ, QUIRO, SATARIANO, DEE, TORREZ and WHEELER)**

132.   Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

133.   In doing the acts complained of herein, Defendants JACQUEZ, QUIRO, SATARIANO, DEE, TORREZ and WHEELER acted under the color of the law to violate MARTINEZ' basic human dignity and his right to be free from cruel and unusual conditions under the Fourteenth Amendment to the United States Constitution, including the right to be free from the use of excessive force by correctional deputies and other government actors.

134.   As a proximate result of defendants' malicious and sadistic conduct, MARTINEZ suffered injuries and damages as set forth in paragraphs 127-128.  The punitive damage allegations of paragraph 129 apply in this Claim for Relief to all individually-named Defendants.

**Second Cause of Action**
**(Eighth Amendment – Cruel and Unusual Punishment, 42 U.S.C. §1983 - *Monell* Liability)**
**(MARTINEZ Against Defendant COUNTY)**

135.   Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

136.   The COUNTY, by and through its supervisory officials and employees, has been given notice on repeated occasions prior to the beating administered to MARTINEZ, of a pattern of ongoing constitutional violations and practices by the individually-named Defendants herein and other correctional deputies employed at the COUNTY Main Jail and other jails in the

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

COUNTY jail system, including having received notice regarding the use of excessive force, and cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

137.  These policies and practices have been and continue to be implemented by Defendants, such as the beating suffered by MARTINEZ at the hands of JACQUEZ, QUIRO, SATARIANO, DEE, TORREZ and WHEELER, acting in concert under color of state law, in their official capacity, and are the proximate cause of the Plaintiff's ongoing deprivation of rights secured under the Eighth Amendment.  The force used by JACQUEZ, QUIRO, SATARIANO, DEE, TORREZ and WHEELER was not a good faith effort to maintain or restore order, but was applied maliciously and sadistically for the very purpose of causing harm.

138.  COUNTY, by its policy and practice of isolating people in inhumane conditions referenced above, is subjecting individuals, including Plaintiff, to serious psychological and physiological harm.  Jail officials have consistently denied or ignored Plaintiff's and others written requests to be removed from isolation or to have access to at least the minimum out of cell time guaranteed by law.  This amounts to a serious deprivation of the minimal civilized measures of life's necessities.

139.  Despite said notice, Defendant COUNTY has demonstrated deliberate indifference to this pattern and practice of constitutional violations, having shown deliberate indifference, by failing to take necessary, appropriate, and/or adequate measures to prevent the continued perpetuation of said pattern of conduct by their employees and agents. This lack of an adequate supervisorial response by Defendant COUNTY demonstrates the existence of an

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

informal custom, policy, or practice, which tolerates and promotes the continued violation of civil rights of inmates by COUNTY's employees and agents.

140.  MARTINEZ is informed and believes that in addition to these long standing practices and customs, the COUNTY has failed to provide adequate training, or no training at all, on the obligations of COUNTY correctional deputies to not engage in excessive force, and to conduct themselves as professionals charged with not only ensuring the completion of an inmate's criminal sentence, but the safety of inmates as well.

141.  The acts of the individually-identified Defendants alleged herein are the direct and proximate result of the deliberate indifference of Defendant COUNTY and its supervisory officials and employees to violations of the constitutional rights of inmates by the individually-named Defendants and other correctional deputies.

142.  The COUNTY has failed to adequately seek out or stop such sadistic behavior as alleged herein by failing to investigate claims of excessive force, and further failing to adequately discipline, punish, or expel correctional deputies who have engaged in the aforementioned and/or similar conduct when handling inmates.

143.  The COUNTY has either provided no training at all in regards to appropriate handling, treatment, and protection of inmates, or has received wholly inadequate training with no measurable standards, or no measuring, of the training recipients understanding, retention, and application – or non-application – of training materials and subject matter.

144.  MARTINEZ's injuries were a foreseeable and a proximate result of the deliberate indifference of the COUNTY to the constitutional violations taking place in the COUNTY Main Jail and jail system, existing as a result of the patterns, practices, customs and/or policies, and/or lack of training or non-existent training, described above.

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

145.  As a proximate result of COUNTY's conduct and omissions, MARTINEZ suffered injuries and damages as set forth in paragraphs 127-128.  The punitive damage allegations of paragraph 129 apply in this Claim for Relief.

**Third Cause of Action**
**(Intentional Infliction of Emotional Distress - Conspiracy between JACQUEZ, QUIRO, SATARIANO, DEE, TORREZ, and WHEELER)**

146.  Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

147.  The conduct of Defendants JACQUEZ, QUIRO, SATARIANO, DEE, TORREZ and WHEELER, as set forth herein, was extreme and outrageous and beyond the scope of conduct which should be tolerated by citizens in a democratic and civilized society.  In order to deliberately injure MARTINEZ and other similarly situated prisoners, Defendants committed the aforementioned extreme and outrageous acts with the intent to inflict severe mental and emotional distress upon MARTINEZ and convey fear and intimidation to MARTINEZ and the other inmates.

148.  As a proximate result of Defendants' willful, intentional and malicious conspiratorial conduct, MARTINEZ suffered severe and extreme mental and emotional distress.

149.  As a proximate result of Defendants' wrongful conduct, MARTINEZ suffered injuries and damages as set forth in paragraphs 127-128.  The punitive damage allegations of paragraph 129 apply in this Claim for Relief to all individually-named Defendants.

150.  Since the conduct of Defendants JACQUEZ, QUIRO, SATARIANO, DEE, TORREZ and WHEELER, and the injuries to MARTINEZ that they inflicted, occurred in the course and scope of their employment, Defendant COUNTY is therefore liable to MARTINEZ pursuant to *respondeat superior*.

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

**Fourth Cause of Action**
**(Intentional Infliction of Emotional Distress - Conspiracy between JACQUEZ and TRACEY)**

151.  Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

152.  The conspiratorial conduct of Defendants JACQUEZ and TRACEY, as set forth herein, was extreme and outrageous and beyond the scope of conduct which should be tolerated by citizens in a democratic and civilized society.  In order to deliberately intimidate MARTINEZ and other similarly situated prisoners who file administrative grievances, Defendants committed the aforementioned extreme and outrageous act with the intent to inflict severe mental and emotional distress upon MARTINEZ and convey fear and intimidation to MARTINEZ and the other inmates.

153.  As a proximate result of Defendants' willful, intentional and malicious conspiratorial conduct, MARTINEZ suffered severe and extreme mental and emotional distress.

154.  As a proximate result of Defendants' wrongful conduct, MARTINEZ suffered injuries and damages as set forth in paragraphs 127-128.  The punitive damage allegations of paragraph 129 apply in this Claim for Relief to all individually-named Defendants.

155.  Since the conduct of Defendants JACQUEZ and TRACEY, and the emotional injuries to MARTINEZ that they inflicted, occurred in the course and scope of their employment, Defendant COUNTY is therefore liable to MARTINEZ pursuant to *respondeat superior*.

**Fifth Cause of Action**
**(California Civil Code § 52.1)**
**(Against Defendants JACQUEZ, QUIRO, SATARIANO, DEE, TORREZ, WHEELER and COUNTY)**

156.  Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

27

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

157.   The conduct of Defendants JACQUEZ, QUIRO, SATARIANO, DEE, TORREZ and WHEELER as described herein violated California Civil Code § 52.1, in that they interfered with MARTINEZ's exercise and enjoyment of his civil rights, as enumerated above, through excessive force, as well as the conduct constituting cruel and unusual punishment upon MARTINEZ.

158.   As a direct and proximate result of Defendants' violation of Civil Code § 52.1, MARTINEZ suffered violation of his State and Federal constitutional rights, and suffered damages as set forth in paragraphs 127-128.  The punitive damage allegations of paragraph 129 apply in this Claim for Relief to all individually-named Defendants.

159.   Since the conduct of Defendants JACQUEZ, QUIRO, SATARIANO, DEE, TORREZ and WHEELER occurred in the course and scope of their employment, Defendant COUNTY is therefore liable to MARTINEZ pursuant to *respondeat superior*.

## CLAIM REQUIREMENT

160.   MARTINEZ has complied with the requirement that he exhaust his administrative remedies before filing a lawsuit in federal court, pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

161.   MARTINEZ is required to comply with an administrative claim requirement under California law in order to make claims based on state law.  MARTINEZ has complied with all applicable requirements and submitted a timely Government Tort Claim Notice pursuant to G.C. 910, et seq., which has been rejected either in writing, or by operation of law, by the COUNTY.  To be clear, the administrative claim requirement of the COUNTY is as amorphous and unclear as it could possibly be, without sufficient explication of guidelines, deadlines, or basic process information.  MARTINEZ filed his claim via administrative

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.

grievance more than once, without meaningful feedback or response from COUNTY or any employee thereof, but was eventually told by correctional officer supervisors and/or COUNTY Sheriff Department employees that he had exhausted his administrative remedy – in other words there would be no administrative remedy.

**PRAYER FOR RELIEF**,

WHEREFORE, Plaintiff respectfully request that this Court:

1.)    Award Plaintiff general, special and compensatory damages in an amount to be proven at trial.

2.)    Award Plaintiff punitive damages against individually named Defendants, and each of them, for their extreme and outrageous conduct in complete disregard for the rights of the Plaintiff;

3.) Award Plaintiff statutory damages and/or attorney's fees against all Defendants as allowed by 42 U.S.C. §1988.

4.) Grant Plaintiff such other and further relief as the Court deems just and proper.


JURY DEMAND:  Plaintiff demands a trial by jury in this matter, pursuant to FRCP 38(a).


Dated: October 3, 2016                          _/S/ Sarah E. Marinho_
                                                SARAH E. MARINHO
                                                Attorney for Plaintiff

Complaint for Violation of Civil Rights
Jury Trial Demanded
Rikki Martinez v. County of Santa Clara, et al.